## CONSTRUCTION OF WILL.

### Circuit Court of Stark County.

NICHOLAS YOUNGBLOOD ET AL V. HARRY YOUNGBLOOD ET AL.[*]

Decided, February Term, 1908.

*Wills—Devise of Residuary Estate to "Legal Heirs"—Distribution to Grandchildren of Deceased Brother—Heirs of Deceased Devisee Take by Virtue of Section 5971—Intention of Testator—Descent and Distribution.*

Where a testator bequeathes his residuary estate to the "legal heirs" of a deceased brother without other or further designation as to who are intended as his beneficiaries, and by his will directs that such residuum "shall fall to and be divided in equal shares among the legal heirs of my deceased brother, and I hereby bequeath and devise the same to them";  and at the time of making said will one of the sons of the testator's deceased brother was dead, leaving heirs—*Held:*

1. That all persons who at the time of the death of the "deceased brother" of those who answer the description of "legal heirs" of said deceased brother at the time of such brother's death are entitled to share in such a residuary estate in equal proportion,

---

[*] Affirmed by the Supreme Court, without report.

and if at the time of making of the will any of such "legal heirs" had died leaving issue surviving the testator, that such issue shall take the share which would have otherwise gone to such "legal heir," had he survived the testator. Revised Statutes, 5971, controls such distribution.

2. The expression "legal heirs" as used by a testator has a well known, definite meaning in the law, to-wit: Those upon whom the law would cast the estate if the testator had died intestate; the expression "to be divided in equal shares" merely points out how such persons are to take their interests.

*Willison & Day*, for plaintiffs in error.

*D. F. Reinoehl* and *A. N. Kaley*, for defendants in error, cited:

Mooney v. Purpus, 70 Ohio St., 57; Woolley v. Paxson, 46 Ohio St., 307; 30 Am. & Eng. Enc. Law (2d Ed.), 705, 718, 725, 729; Thurston v. Bissell, 13 C. C., 293; Huston v. Crook, 38 Ohio St., 328; Bunnell v. Evans, 26 Ohio St., 409; Wiley v. Bricker, 21 C. C., 109; McKelvey v. McKelvey, 43 Ohio St., 213; 15 Am. & Eng. Enc. Law (2d Ed.), 322; Underhill, Wills, 814; Richey v. Johnson, 30 Ohio St., 288; Weston v. Weston, 38 Ohio St., 473; Campbell v. Clark, 5 New Eng. Rep., 66 (N. H.); Hall v. Smith, 61 N. H., 144; Farmer v. Kimball, 46 N. H., 435; Sears v. Russell, 74 Mass., 86; Denny v. Kettell, 135 Mass., 138; McCartney v. Osburn, 6 West. Rep., 793 (Ill.); Howard v. Fenkell, 10 West. Rep., 671 (Ohio); 2 Jarman, Wills, (5d Ed.), 156; Morrell, In re, 4 Paige, 44; Wickers v. Clarke, 8 Paige, 161; Birney v. Hann, 10 Ky., 322; Chapman v. Chapman, 2 Conn., 347; Thompson v. Garwood, 3 Whart. (Pa.), 287; Loockerman v. McBlair, 6 Gill (Md.), 177; Ward v. Stow, 2 Dev. Eq. (N. C.), 509; Kean v. Hoffecker, 2 Har. (Del.), 103; King v. Beck, 15 Ohio, 559; Collier v. Collier, 3 Ohio St., 369; Jarman, Wills, 204; Paige, Wills, 545, 547; Sinton v. Boyd, 19 Ohio St., 30; Stewart v. Powers, 9 C. C., 143; Delaney v. McCormack, 88 N. Y., 174.

DONAHUE, J.; TAGGART, J., concurs; McCARTY, J., not sitting.

This proceeding in error is brought to reverse the judgment of the common pleas court in an action brought by Harry Youngblood against Nicholas Youngblood and others, to construe the

will of Peter Youngblood, deceased, by the terms of which will Peter Youngblood devised certain real estate and personal property to his widow for her life with the right to consume thereof all that might be necessary for her support, and at her death such real estate if unsold, and all personal property or proceeds thereof that should remain unconsumed, he directed ''shall fall to and be divided in equal shares among the legal heirs of my deceased brother, John Youngblood, and I hereby bequeath and devise the same to them.'' This latter provision of the will is the one sought to be construed, and the question arising thereon is as to who are the heirs of his brother, John Youngblood, deceased. The common pleas court made a finding of fact covering the questions in this case at length and about these facts there is no dispute. The question is as to the conclusion of law from these facts. It is not necessary to give in detail all of the finding of facts; it is sufficient for the purpose of this review to note the controlling ones.

Peter Youngblood executed this will on the twenty-sixth day of September, 1893; he died September 30, 1894; that his wife died July 1, 1906; that his brother, John Youngblood, died in 1855, leaving four children surviving him as his only heirs at law. These children were John, Joseph, Frank and Nicholas; that the son Joseph died in September, 1888, leaving six children —Mary, Clara, Harry J., Cora, Joseph and Blanch. Some of the other sons have died since the death of the testator but there is no contention between the parties here that their death makes any difference in the construction of this item of the will; the controversy is as to the interest these children of Joseph Youngblood take under the will of Peter Youngblood. It is insisted that these six grandchildren were and are heirs of John Youngblood, the deceased brother of the testator, and that therefore they come within the class of heirs of John Youngblood named in Peter Youngblood's will; that the directions of the will are that these heirs shall share equally and that therefore each of said grandchildren shall take an equal share with the living sons of John Youngblood, deceased. That is to say, that this residue of Peter Youngblood's estate must be divided into nine parts,

one of each of said parts given to the living sons of John Young-
blood and one of these parts given to each of the children of
Joseph Youngblood. In view of the doctrine announced by the
Supreme Court of Ohio in the case of *Mooney* v. *Purpus*, 70
Ohio St., 57, if these grandchildren are heirs of John Young-
blood, deceased, then they each share equally with their uncles
in this devise. That is to say, each will take an equal part as
heir of John Youngblood and not simply the share of their
father had he survived the testator.

While it is true that in the construction of a will the main
object to be arrived at is the intention of the testator, yet, a
court is not authorized to say, that the testator intended other
than the clear and manifest meaning of the words used to ex-
press his intention. He is supposed to have known the legal effect
and import of the words used, and to have intended that which
they express, notwithstanding it might seem that he had inad-
vertently used these words.

It is only where there is an ambiguity, an uncertainty in the
words used, or a contradiction in the terms that a court is justi-
fied in attempting to determine the intention of a testator in order
to determine the purpose and construe the language of the will.
So in this case we must conclude that he used the word "heirs"
advisedly, and if the effect of that be to give to these six children
six shares instead of one, although we might personally think
that the testator did not so intend, yet we must nevertheless give
full effect to the language used, for a court has no power to
make wills for people, but only to construe them. In the case
before us the words used are plain, certain and unambiguous,
and have a well-known, definite legal meaning, and full effect
must be given to them without regard to consequence.

The only thing left for the court to determine is who are the
heirs of John Youngblood, deceased, and this question must be
determined by reference to the statute of descent and distribu-
tion, for it is only by force of this statute that any heirs of de-
ceased persons exist. In construing these statutes we must keep
in mind the fact that no living person has heirs. The legal defi-
nition of the word "heirs" is, "those who take the estate of an

intestate under the statutes of descent and distribution,'' and all persons who do take any portion thereof under this statute, no matter how small it may be, is an heir in the legal contemplation of the word, so that an hour before John Youngblood's death he had no heirs—they were simply heirs apparent, nothing more; but at his death, then they became his heirs, and that class became fixed and certain and can never be changed by any subsequent event no matter of what nature or extent it may be. That is to say, when a man dies the law determines who his heirs are, and except for the one exception of posthumous issue, there is not and can not be any change in those heirs. To illustrate this let us consider the descent of property owned by John Youngblood at his death. His four sons living would be his only heirs, and if one of them died the day after, his children would inherit not from John Youngblood but from their father, and the estate would first be vested in the legal representatives of Joseph Youngblood and would be applied to the payment of his debts and legacies, and the residue would pass to them if he died intestate, but they would not inherit from the grandfather if their father survived their grandfather by so much as one moment of time; but if the father died an hour before the grandfather then they would inherit directly from the grandfather. True, they would only take their father's share but they would take as heirs of the grandfather and not as heirs of the father; so that in order for a grandchild to become the heir of the grandfather, the father must die before the grandfather; otherwise any interest they take in the grandfather's estate is taken as the heir of the father and not as the heir of the grandfather. Joseph Youngblood lived thirty-three years or more after his father's death. All that time he was the heir of the father, and if John Youngblood had had an inheritable interest in any property the enjoyment of which was delayed for a half century, Joseph Youngblood would inherit his share of that property, and any part of it that his children would take, they would take through him, as his heirs, and they could never take as heirs of their grandfather. This being true, notwithstanding the death of Joseph Youngblood before the death of the testa-

tor, Peter Youngblood, and even before the execution of his will, it in no wise changed the heirs of John Youngblood. · They were fixed and certain at the time of his death, and except for posthumous issue would forever remain fixed and certain. These grandchildren no more become his heirs than the most absolute stranger to him; they never were his heirs and never can be his heirs. Their father, Joseph Youngblood, having survived the grandfather forever precluded the possibility of these grandchildren becoming the heirs of the grandfather, and any intestate property of which the grandfather died seized would pass to, and vest in, their father's estate, and if they derive any benefit therefrom of any kind or character it would be because they inherit the same from their father immediately, and not because they inherit anything from the grandfather.

We are therefore clearly of the opinion that these grandchildren never were the heirs of John Youngblood; could not become so because of the death of their father after the death of the grandfather, but could only become the heirs of John Youngblood by the death of their father before the death of their grandfather; and that being true they do not come within the class designated in the will as the heirs of John Youngblood, deceased, and could take no interest whatever under this will, were it not for the provisions of Section 5971, Revised Statutes, which provides that when a devise of real or personal estate is made to any children or other relative of the testator, if such children or other relative shall have been dead at the time of the making of the will, or shall die thereafter leaving issue surviving the testator, in either case such issue shall take the estate devised in the same manner as the devisee would have done, etc. So that we think the word "heirs" in the will of Peter Youngblood does designate a class and that that class was fixed and certain immediately upon the death of John Youngblood, and that they were his four sons; that these four sons were relatives of the testator; that Joseph died before the making of the will, and that under the provisions of Section 5971, Revised Statutes, his children take his share, no more and no less. So that this residuary estate under this

will passes to said four sons of John Youngblood, deceased, who were his only heirs at law, in equal proportions, share and share alike, that is, each shall take one-fourth thereof, and that the children of any of these deceased sons shall take their father's interest therein.

The conclusion of law of the common pleas court upon the facts found and the judgment entered therein was erroneous and should have been as hereinbefore stated, and for such error, which we find prejudicial to the rights of plaintiffs in error, the judgment of the common pleas court is reversed, and the judgment may be here entered that should have been entered in the common pleas court upon these findings of fact.  Exceptions of defendants in error noted.  Costs of this proceeding in error adjudged against the defendants in error. and cause remanded for execution.